UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

MELANIE I. CORNELLL

        Plaintiff,

  v.

SELECT PORTFOLIO SERVICING
INC. ("SPS"); JOHN DOES NOS. 1
through 20

        Defendants.
_____

Civ. No. S-11-1462 FCD/KJN

MEMORANDUM AND ORDER

----oo0oo----

This matter is before the court on the motion of defendant Select Portfolio Servicing, Inc. ("SPS" or "defendant"), to dismiss plaintiff Melanie I. Cornell's ("plaintiff") First Amended Complaint pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6).[1][2]  Plaintiff opposes the motion.  For the

---

[1] Because oral argument will not be of material assistance, the court orders these matters submitted on the briefs.  E.D. Cal. L.R. 230(g).

[2] Defendant, in its motion, did not raise the jurisdictional issue discussed throughout this order. Nevertheless, the court, as set forth below, raises the issue *sua sponte*.

1

reasons set forth below, defendant's motion is GRANTED.

## BACKGROUND

Plaintiff filed her original complaint alleging claims for quiet title and "permanent injunction" against defendant in California State Superior Court for the County of Nevada. (See Pl.s' Compl., filed May 31, 2011, [Docket #2, Ex. A].) Plaintiff then filed an amended complaint,[3] adding a claim for wrongful foreclosure. (See Pl.'s First Am. Compl. ["FAC"], filed May 31, 2011, [Docket #2, Ex. B].) Defendant timely removed the case to this court pursuant to 28 U.S.C. § 1441(b) based on diversity jurisdiction under 28 U.S.C. § 1332. (Def.s' Notice of Removal, filed May 31, 2011, [Docket #2].)

In August of 2005, plaintiff obtained a mortgage from New Century Mortgage Company secured by a Deed of Trust on plaintiff's property. (Def.'s Req. for Judicial Notice ["RJN"], filed June 7, 2011, [Docket #8, Ex. 1].) The Deed of Trust accurately describes property plaintiff admits to be her own, located at 23629 Fagerlie Road, Auburn, California 95602. Plaintiff "promised to pay this debt in regular [p]eriodic [p]ayments and to pay the debt in full not later than 09/01/2035." (Id.)

SPS does not originate or own mortgage loans; it merely "accepts monthly payments and administers the terms of mortgage loans." (Pl.'s Decl. in Opp'n to Def.'s Mot. to Dismiss ["Pl.'s

---

[3] Plaintiff also filed a "Second Amended Complaint." Plaintiff, however, did not seek leave of court to file said complaint and the time for amendment as of right had passed. Fed. R. Civ. P. 15. Thus, plaintiff's second amended complaint is a nullity and the court does not consider it in the disposition of this motion to dismiss.

2

Decl."], filed July 13, 2011, [Docket #23, Ex. 3].)  In November of 2005, defendant sent plaintiff a letter informing her that it would be taking over the servicing of her loan.  (Pl.'s Decl., Ex. 3.)  Plaintiff began making monthly payments directly to SPS. (FAC ¶29)  However, "[p]laintiff ceased making said monthly payments in November, 2010, when she became fearful she was making monthly payments to an entity that was not authorized to legally receive said payments."  (Id.)

On December 21, 2010, defendant sent plaintiff a notice of default, informing her that she was delinquent on payments for both November and December 2010, and must pay $5,406.57 in order to cure the default.  (Pl.'s Decl., Ex. 4.)  The notice informed plaintiff that failure to pay the amount demanded *may* result in the commencement of foreclosure actions.  (Id.)  In February, 2011, plaintiff sent defendant a "notice of tender"; however, plaintiff conditioned her willingness to tender on defendant's "showing of ability to transfer good title of the subject matter property to [plaintiff]."  (Pl.'s Req. for Judicial Notice ["PRJN"], filed July 13, 2011, [Docket #23], Ex J.)  Defendant responded to plaintiff's "notice of tender" in writing, stating that "SPS is confident that the current reconveyance processes [it has] in place are compliant with Federal and State regulations, and the terms of the Note and security instrument." (PRJN, Ex. K.)  In this correspondence, defendant "decline[d] [plaintiff's] request . . . to accept the payoff funds in exchange for a clean title" and "enclose[d] an updated payoff statement to enable [plaintiff] to send the accurate payoff amount."  (Id.)  Defendant advised plaintiff that "[u]pon receipt

3

of those certified funds SPS will begin the aforementioned reconveyance process."  (Id.)

In March of 2011, plaintiff sent to defendant a "demand for assurance of performance."  (Id., Ex. L.)  Plaintiff alleges that defendant never responded to this "demand."  Two months later, plaintiff sent defendant a "qualified written request," purportedly in accordance with the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e).[4]  (Id., Ex. M.)  This correspondence requested defendant provide the "true creditor party who can establish beyond any doubt, the legal right, via compliance with all applicable statutory requirements, to accept any payments on the note."  (Id.)

Concurrent with its reply to plaintiff's opposition, defendant filed a "supplemental request for judicial notice."  (See Def.'s Supplemental request for Judicial Notice, filed July 29, 2011, [Docket #26].)  Included in the request was a "corporate assignment of deed of trust" by SPS to U.S. Bank National Association as trustee, on behalf of the asset backed securities corporation home equity loan trust, series NC 2005-HE8.  (Id., Ex. 2.)  This corporate assignment of deed of trust was recorded on June 14, 2011.  (Id.)

---

[4] The court notes that 28 U.S.C. § 2605(e) requires a loan servicing company to reply to any qualified written request, which defendant purportedly did not do.  However, this correspondence does not constitute a valid qualified written request under the Act.  See Selby v. Bank of America, 2011 WL 902182, *4 (S.D.Cal 2011) (Holding that such requests only pertain to servicing of the loan; they do not apply to inquiries regarding the lender or owner of the note.)  Thus, plaintiff has no claim against defendant pursuant to the Real Estate Settlement Procedures Act.

4

Plaintiff has filed this lawsuit out of fear that "no money collected by SPS will go toward discharging any legitimate debt on [her] behalf." (Pl.'s Decl. ¶24.) Plaintiff does not dispute that she signed the deed of trust, encumbering her property to secure the loan she received. Nevertheless, plaintiff claims that she is the "vested fee simple absolute owner of [the] real property located at 23629 Fagerlie Road, Auburn, California 95602" and seeks to quiet title in her favor. (FAC ¶ 6.) Plaintiff "requests this [c]ourt to require defendant SPS to provide copies of its documentation proving it has the legal right and authority to commence foreclosure proceedings against the plaintiff's real property." (Id. ¶ 15.) However, defendant has not instituted foreclosure proceedings, nor has defendant threatened to institute foreclosure proceedings. Plaintiff further contends that "defendants have claimed, and are claiming, a legal or equitable right, title, estate, lien or interest in plaintiff's real property or are asserting a cloud upon title to plaintiff's real property. (Id. ¶ 27.) However, defendant has not asserted any legal interest in the property, apart from servicing the mortgage. Indeed, defendant specifically acknowledges that it does not originate or own mortgage loans; it merely "accepts monthly payments and administers the terms of mortgage loans." (Pl.'s Decl., Ex. 3.)

**STANDARD**

Under Federal Rule of Civil Procedure 8(a), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." See Ashcroft v. Iqbal, 129

5

S. Ct. 1937, 1949 (2009).  Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests."  Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations omitted).  "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims."  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true.  Cruz v. Beto, 405 U.S. 319, 322 (1972).  The court is bound to give plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  Retail Clerks Int'l Ass'n v. Schermerhorn, 373 U.S. 746, 753 n.6 (1963).  A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief."  Twombly, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 129 S. Ct. at 1949.

Nevertheless, the court "need not assume the truth of legal conclusions cast in the form of factual allegations."  United States ex rel. Chunie v. Ringrose, 788 F.2d 638, 643 n.2 (9th Cir. 1986).  While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation."  Iqbal, 129 S. Ct. at 1949.  A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a

6

cause of action." <u>Twombly</u>, 550 U.S. at 555; <u>Iqbal</u>, 129 S. Ct. at 1950 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." <u>Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters</u>, 459 U.S. 519, 526 (1983).

Ultimately, the court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." <u>Iqbal</u>, 129 S. Ct. at 1949 (citing <u>Twombly</u>, 550 U.S. at 570). Only where a plaintiff has failed to "nudge [his or her] claims across the line from conceivable to plausible," is the complaint properly dismissed. <u>Id.</u> at 1952. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." <u>Id.</u> at 1949. This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Id.</u> at 1950.

In ruling upon a motion to dismiss, the court may consider only the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. <u>See</u> <u>Mir v. Little Co. Of Mary Hospital</u>, 844 F.2d 646, 649 (9th Cir. 1988); <u>Isuzu Motors Ltd. v. Consumers Union of United States, Inc.</u>, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

## ANALYSIS

The jurisdiction of federal courts is limited to specific

7

"cases" and "controversies." U.S. Const., art. III, § 2. Article Three's reference to "cases" and "controversies" represents the first critical threshold to federal court jurisdiction. New Jersery v. Heldor Indus., Inc., 989 F.2d 702, 706 (3d Cir. 1993). Without jurisdiction, this court cannot adjudicate the merits of this case or order any relief. See Morongo Band of Mission Indians v. Cal. State Bd. of Equalization, 858 F.2d 1376, 1380 (9th Cir. 1988). ("If the district court had no jurisdiction over the subject matter, the action should have been dismissed, regardless of the parties' preference of an adjudication in federal court.")

A central aspect of the jurisdictional inquiry relates to whether a case is sufficiently ripe for adjudication. See Southern Pac. Trasp. Co. V. Los Angeles, 922 F.2d 498, 502 (9th Cir. 1990) ("If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed.") Because the issue of ripeness is jurisdictional, a court can consider the question of ripeness on its own initiative. Metropolitan Washington Airport Auth. V. Citizens of Abatement of Airport Noise, 501 U.S. 252, 265 n.13 (1991).

Ripeness specifically concerns the appropriate timing of a lawsuit. Anderson v. Green, 513 U.S. 557, 558 (1995). "[I]ts basic rationale is to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements." Abbot Laboratories v. Gardner, 387 U.S. 136, 148 (1967). The ripeness doctrine proscribes adjudication of a claim if "it rests upon contingent future events that may not occur as anticipated or indeed may not occur at all." Texas v. United

States, 523 U.S. 296, 300 (1998). The mere possibility of some conjectural future harm is insufficient to constitute a viable case or controversy. Young v. Harris, 401 U.S. 37, 41–42 (1971). In this regard, the standing and ripeness inquires are inherently intertwined because, "if the contingent events do not occur, the plaintiff likely will not have suffered in injury that is concrete and particularized enough to establish the [injury-in-fact] element of standing." Bova v. City of Medford, 564 F.3d 1093, 1096 (9th Cir. 2009). Finally, in determining the ripeness of a claim, the court considers prudential factors that may favor declining jurisdiction. Reno v. Catholic School Serv. Inc., 509 U.S. 43, 67 (1993). More specifically, A decision that a case is not prudentially ripe means that the case will be better decided later and that constitutional rights of the parties will not be undermined by the delay. New York Civil Liberties Union v. Grandeau, 528 F.3d 122, 131 (2d Cir. 2008).

Determining whether a case is ripe for review requires the court to "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." Nat'l Park Hospitality Ass'n. v. Dept. of the Interior, 538 U.S. 803, 814 (2003) (internal quotations omitted). The critical question for determining whether a case is fit for review is whether the outcome of the claim rests upon uncertain and contingent events that may or may not occur as plaintiff anticipates. New Mexicans for Bill Richardson v. Gonzales, 64 F.3d 1495, 1499 (11th Cir. 1995). Whereas the hardship analysis, similar to the standing inquiry, focuses on whether the harm

9

alleged is "direct and immediate."  Western Oil & Gas Ass'n v. Sonoma County, 905 F.2d 1287, 1291 (9th Cir. 1990).

In this case, plaintiff's claims are unripe because her essential allegations are purely conjectural and hypothetical. First, plaintiff's claims regarding title to her property are not fit for review because, contrary to her allegations, defendants have not taken any actions that have affected title to her property.  The only actions that defendant has taken with regard to plaintiff's property is servicing her monthly mortgage payments under the deed of trust and issuing a notice of default when plaintiff fell behind on her monthly obligation.  Such actions do not give rise to any cognizable claim at this juncture.  Plaintiff may have claim in the future if, for example, defendant initiates foreclosure proceedings without presenting its documented right to do so.  Similarly, plaintiff may have a future claim if she pays the balance of the debt obligation under the deed of trust and defendant fails to convey unencumbered title.  The entire purpose of the ripeness doctrine, however, "is to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements" over whether or not a specific defendant may or may not wrong the plaintiff in the future.  Abbott, 387 U.S. at 148.  Plaintiff's claims concerning adverse effect on her title are not ripe because they depend entirely on whether or not some harmful conduct will or will not occur in the future.

Indeed, one court sitting in the Ninth Circuit has specifically held that a quiet title claim is not ripe for adjudication absent an immediate threat of foreclosure.

10

Specifically, in <u>Boersma v. M&I Marshall & Isley Bank</u>, 2010 WL 5056247 (D.Ariz., 2010), "plaintiff filed suit against M&I . . . claiming that 'he is in anticipation of the beginning of foreclosure action because he is now 2 months behind on payments.' [Plaintiff], however, did not state whether he has received any notice of foreclosure." <u>Id.</u> at *1.  The court explicitly held that plaintiff's claim did not allege a sufficiently direct or imminent injury, and thus was unripe, because the entirety of his claim rested upon an event the occurrence which was purely speculative — foreclosure of plaintiff's home.  <u>Id.</u>  Similarly, in this case, plaintiff has merely alleged that she fears she may be paying the wrong entity which may eventually foreclose on her property if she does not continue to pay it.[5]  Such conjectural anticipation of a speculative wrong, however, is not sufficiently concrete to establish a justiciable case or controversy under Article III of the Constitution.

The <u>Boersma</u> decision is a reflection of the axiom that "[a] basic requirement of an action to quiet title is an allegation that plaintffs 'are the rightful owners of the property i.e., that they have satisfied their obligations under the deed of trust.'".  <u>See</u> <u>Rosenfeld v. JPMorgan Chase Bank, N.A.</u>, 732

---

[5] Plaintiff, throughout her various supporting papers, mentions numerous times that defendant has no right to collect because it does not hold the promissory note. Pl.s Mem. Opposing Def.'s Req. for Judicial Notice, filed Aug 5, 2011, [Docket #34], at 7; Pl.'s Opp'n at 6.) This "holder of the note" theory has been heard and repeatedly discredited by this court and numerous others.  <u>See</u> <u>Oliver v. Countrywide Home Loans</u>, 2009 WL 3122573 *5-6 (E.D.Cal 2009) (*citing* <u>Alvara v. Aurora Loan Servs.</u>, 2009 WL 1689640 *6 (N.D.Cal 2009).

F.Supp.2d 952, 975 (N.D.Cal 2010) (*quoting* Kelley v. Mortgage Elec. Registration Sys., 642 F.Supp.2d 1048, 1057 (N.D.Cal 2009). In this case, unless defendant engages in some conduct that would actually affect title to plaintiff's home, rather than simply servicing her mortgage, this matter is not presently fit for review.

Moreover, plaintiff's claim for wrongful conversion is not currently fit for adjudication. Plaintiff's claim for wrongful conversion rests on her wholly hypothetical claim that she may be paying the incorrect entity under the deed of trust, and thus, may have to pay another entity in the future.[6] Regardless of her supposition, plaintiff is still required to pay down the debt secured by the deed of trust. To this end, the appropriate time period at which to bring a claim of this nature would be after plaintiff has paid down the debt in its entirety and seeks clear title from defendant. See Grandeau, 528 F.3d at 131. If defendant does not provide clear title at that time, plaintiff would have a viable claim that would be ripe for adjudication.

As to the hardship prong of the ripeness inquiry: plaintiff's claims are not ripe for review because she has demonstrated no direct and immediate harm — the harms alleged are contingent upon conjectural conduct by defendant that may or may not occur. The court cannot conclude that plaintiff, at this juncture, has suffered any harm by merely paying her mortgage.

---

[6] The court notes that the appropriate procedural device for asserting a claim of this nature would be in the form of interpleader under either Federal Rule of Civil Procedure 22 or 28 U.S.C. § 1335. However, a claim for wrongful conversion is inappropriate in this context where the claimant still owes money on a debt secured by a deed of trust.

12

1  Indeed, the only harm that plaintiff alleges is based upon her
2  subjective apprehension that "no money collected by SPS will go
3  toward discharging any legitimate obligations on [her] behalf"
4  and she will "then be liable to pay yet again in the event any
5  *bona fide* creditor [attempts] to collect from me." (Pl.'s Decl.
6  at 9:22-24; Pl.'s Mem. Opposing Def.'s Req. for Judicial Notice,
7  filed Aug. 5, 2011, [Docket #33], ¶ 25.)  Such speculative harm
8  contingent on hypothetical future events is not sufficiently
9  "direct and immediate" to form a justiciable case or controversy
10 under Article III of the Constitution.

**CONCLUSION**

12     Plaintiff's complaint is hereby dismissed in its entirety
13 for lack of jurisdiction under Article III of the United States
14 Constitution.

16     IT IS SO ORDERED.
17 DATED: September 7, 2011

                                FRANK C. DAMRELL, JR.
                                UNITED STATES DISTRICT JUDGE